Good afternoon, your honors. Blaine Green from Pillsbury Winthrop Shaw Pittman for the appellant Bob Kaufman. I will note right at the outset I would like to reserve one to two minutes for rebuttal at the end. This case is about what is an opportunity to be heard at a meaningful time and in a meaningful manner. It's the heart of procedural due process under Matthews v. Eldridge. We have claims both for constitutional due process violations and for violation of the California Vehicle Code 22852. 22852 itself was enacted in response to the City of San Francisco's previous failure to comply with constitutional due process requirements on vehicle tows. I'm going to focus first on 22852 and then constitutional due process. A few points that I want to emphasize with regard to the statute itself is that it requires an actual in-person hearing. And the language of the statute, in fact, refers to a hearing nine different times. It refers to appearing on the notice. It refers to conducting the hearing with a hearing officer. It further refers in Section D to the failure of the registered owner or the owner of the vehicle to request or to attend a scheduled hearing. These are all indices that what the legislature had in mind was an actual in-person hearing. So a written hearing doesn't satisfy 22852. Now, why did the legislature enact 22852 to require a written in-person hearing? That was because it's required by constitutional due process. The cases that have actually discussed 22852 make clear that an in-person hearing is required. The two cases I want to focus on here are Goichman and City of Los Angeles v. David. The Goichman case is 682 F. 2nd, 1320. In that case, the Ninth Circuit held that an immediate post tow hearing was not required. So the issue was not just can you get a do you have to have a hearing within two days. In that case, the owner of the vehicle argued I should be able to get an immediate post tow hearing. Something like the city is arguing it provides by having a stop window where there's you just drop in and you can immediately have your hearing. The court held that the reason that that wasn't justified is the governmental burden to require a hearing immediately would be too great. And why is that? The question is, you might not have to have that, but why, if you do have this stop window that you can show up and have an immediate hearing, why isn't that sufficient? Well, it would have to be meaningful and there would have to be the opportunity for adversarial input. And what the courts have made clear that that means is the opportunity to actually have the towing officer there to present evidence for the car owner to present his own evidence and for a hearing officer to be present who actually has the authority to grant the relief that is requested. In this case, there's a clerk at the tow window that doesn't have any authority to grant a request, nor does the clerk at the tow window bring in the officer who towed the vehicle. In fact, there's no hearing whatsoever. Sergeant, can you? Well, of course, in this case, your client didn't ask for one, so we don't know what the record is on what would have happened, right? What our client did was fill out the forms that the SFPD asked anybody who was requesting review to fill out. And, in fact, Sergeant Ching testified that your hearing was not adequate. But I don't think there's any context on the record, and whatever consequence it is, you know, the chips fall where they may, but your client didn't ask for one of these hearings that you deem inadequate. He did not go to the stop window. That is correct. I'm sorry. He did not. He did not go to the stop window about these tows. I think that's He filed a request for supervisor's review. He submitted this form, which is entitled Request for Supervisor's Review, and the police department He wrote on there his view of things, right? That's correct. And the police department stated that your hearing is to fill out a form, that is, your hearing, at the stop window. And this is the police department form, so they say if you go to the stop window, what you will be told to do is you fill out your form, quote, that is your hearing. This is Sergeant Ching who is responsible for hearings at the police department. So, in other words, even if he had gone to the stop window, he would have been told to fill out this Request for Supervisor's Review, and that was your hearing. But the problem is that we don't have a client of yours who went there and found out what the answer is and how the review is conducted. Instead, we have somebody who sent in this form, and then the department acted on the form fairly expeditiously and gave him an answer, right? We yes. He has applied based solely on the form, but that is the form that the police department requires both for somebody who wants to write in and for somebody who goes to the stop window. So, in other words, even though he didn't go to the stop window, Sergeant Ching has made clear that he would have been told to fill out the form and that would have been his hearing at the stop window. There would not have been the towing officer. There would not have been the opportunity for him to describe his predicament or tell his story. He would have simply been told to fill out the form and leave it there. And then it would have been later reviewed, and then perhaps one month later or several weeks later, a decision would have been made, again, which doesn't comply with the 48-hour requirement. Kagan. Let's take the June the May 29 tow, the June 1 tow. He sends in the piece of paper, right? Yes. And he requests it on June 3, correct? I'm sorry? June 3. June 3 was the date that he submitted the form. Correct. There's a telephone call on June 5, correct? There was a telephone call on June 5 with regard to a geometro. The geometro is not actually the subject of the claims because It sits on top of the trailer. It sits on top of the trailer. And as to that geometro, he was told that his request was granted, that that tow was improper, and he could get the geometro back. That is correct. But he did not hear back with regard to the Ford Motorhome or the car trailer, which were the subject of May 29 and June 1 tows. He didn't hear back on June 5 about those tows. And it turns out it's because the police department denied his request, although they did not tell him that. In fact, the only documentary evidence with respect to each of the tows that were denied, that is May 21, May 29, and June 1, all of the documentary evidence shows July 2, a month later, as the date of notification. That's both in the letters that were sent to Bob Kaufman, also in the chronology of investigation, that's the internal San Francisco Police Department document, and also in the request for a supervisor's review, where there's a dance state notification July 2, denied. Is there anywhere in your complaint that you allege that there is some kind of violation where there's a delay in conveying the results of a hearing? What we have alleged is that there was a failure to conduct the hearing within 48 hours, as required by the statute. And so we then extrapolated on that in our papers, and our argument said that Mr. Kaufman was never – no hearing was conducted, and he wasn't told about the result of any denial within the 48 hours that is required by the statute. But your theory is, basically, in part, is that the hearings that are promised at the tow windows don't occur, and that there's no meaningful hearing, and there's a procedural injury traceable to that, right? Yes. But Officer Chin really doesn't go that far in his testimony, unless you can point me someplace else, and I'm just quoting. Your testimony is at the window. There are tow hearing officers that do more than just receive the supervisor's appeal of tow fees. They will actually listen to the complainant's basis of why the complaint was that tow was invalid. Answer, in theory, yes. Question, can they do this in practice and then make a determination at that time? Sometimes, yes. They are capable of doing that. So it's not – I mean, the record, unless you can point me somewhere else, isn't definitive that Officer Chin is saying, we never do it. He just says – he implies that it's not done very often, but he says they're capable of doing it. Well. And he says – then he goes on to say they do do it. Well. Here's my problem, and I want you to address this, is that I realize this seems hyper-technical, but the fact that your client didn't ask for a hearing is somewhat meaningful in terms of standing to me, because if he wasn't actually injured by the denial of the hearing because he didn't ask for one, it's hard to see where the constitutional injury is here. The procedure that the police department has set up, or the policy that they have set up, to comply with 22-852 is for individuals such as Bob Kaufman – and this is the city's argument – to do either one of two things, to go to the stop window or to submit a written request. And if you go to the stop window, we contend that there's no meaningful review. That doesn't comply with due process. Now, the Court's question, it sounds like, goes more to the point of, okay, that's beside the point. He didn't go to the stop window. Well, you can't – my question is, it's hard for you to complain about a procedure in which you didn't avail yourself, because we don't know what would have happened. If you'd gone to the window and you said, no, we're not going to hear it, I have no quarrel with that, and that may, in fact, probably would have happened. My question is, since you didn't do that, where does that put us? That procedure itself clearly does not comply with – well, strike it. Let me start over. What the police department has said is that if you go to the stop window, you will be told to fill out this form, and that is your hearing. That's not what – that's not what Officer Chin said, though. Well, this is – I'm quoting from Sergeant Chin's testimony. Where he said, an in-person hearing, all we request is when they fill that out, the information out that they're coming down to the window for, okay, they fill that out. That's their in-person hearing. You put your information down. That's it. That's at page 148 of the record. Right. In 173, he says, well, they are capable of having a hearing, and sometimes they do. He also testified that in terms of hearing, nobody at the stop window has the authority or the ability to make any determination that the tow was invalid. He only – He says sometimes they just make a determination that I should grant it right there, and I do. Well, I think that that's disputed in the record, because he's – I'm also noting at page 260 of the record, no officers other than Centurione and Ching handle tow hearing requests. And at 170, neither Centurione nor Ching provide in-person hearings at the stop window. So it strikes me that based on what has been read, at the very least, there would be a disputed issue of fact as to whether there actually is a constitutional and satisfactory hearing or any process that Mr. Coffman could have availed himself of at the stop window.   He didn't sue on his previous hearing. And he doesn't know because he didn't ask. He had previously, in fact. And this is one of the points that the suit – He didn't sue on his previously. That is correct. We did not sue on that. I just want to make sure I understand. Are you saying someone told him that when he wanted to request a hearing, he was supposed to submit a supervisor review form? Because why didn't he just write and ask for an oral hearing or for any kind of in-person hearing? Previously, in prior instances, several years ago, he had gone to the stop window and sought to have his matter heard. And he was laughed at. This is a record. This is his testimony at deposition when he was asked this question. He didn't get a hearing. And since that time, he was provided copies of these requests for supervisor's reviews. And he kept these forms then for use, having had that prior experience of not having been able to have a hearing at the stop window, so that in the future after that prior experience, he followed their written procedure of sending in what they call – this is not his language. This is their system that they've set up, requests for supervisor's review. And I would say that even if that is not technically a quote, unquote, request for hearing, this is the process that the city has described as their way of setting up compliance with the constitutional due process requirements. And this goes both to 22-852 and constitutional due process. And that doesn't satisfy constitutional due process, that particular process, because there isn't any hearing. Even if you call it a written procedure and not a hearing, there still needs to be the opportunity for adversarial input. And there isn't here. He doesn't get to hear what the towing officer is contending was the basis for the tow. He doesn't get to challenge the factual basis for the tow, that sort of thing. Our questions have taken you over your time, but we'll give you some time for rebuttal. Thanks. Thank you. Good afternoon, Your Honors. Josh White on behalf of appellees and defendants. The first sort of issue that I'd like to speak to is the existence of these in-person hearings. And there are a couple of, I think there are a couple of important pieces of evidence as to why they exist. And basically, I think Mr. Kaufman is relying on other pieces of evidence that don't actually stand for what he is alleging. The first is this sort of what I think is excessive reliance on aspects of Sergeant Ching's testimony that don't in fact stand for the proposition that he is seeking to establish. One is there's some testimony plaintiff's counsel just referred to, you know, page 148 of the record. And the testimony about what happens at in-person hearings is in response to a question about what goes on outside of the stop windows. But what happens outside of the stop windows is, for purposes of this appeal, absolutely irrelevant. What the city offers is the opportunity to contest your hearing in person at the stop window. And if there was any question about you can't, I assume at the stop window, he's not going to have the ability to bring witnesses to compel testimony, to cross-examine, right? The record isn't very well developed on that point. And I think that's sort of What does the study do? I don't think there's anything in the record, Your Honor, that would preclude a person from presenting the full extent of their case to a neutral hearing officer. And that's what the testimony of Officer Centurione establishes, and it's what the testimony of Sergeant Ching establishes. Mr. White, can I ask you, how is a vehicle owner supposed to request a hearing by mail? One would simply mail a request for an in-person hearing to 850 Bryant Street to the stop window. So just write a letter saying, I want a hearing? Absolutely. In fact, I think there's evidence that Mr. Kaufman did that with respect to one of these tests. So was his request for a supervisor review the same as a request for a hearing? It's a request for a supervisor's review is the term that the San Francisco Police Department uses to describe the written hearing procedure. It's different from a request for an in-person hearing. So if I don't show up on Bryant Street, just outside the courthouse here, and ask for an immediate hearing, then someone can write a letter to the city and say, I still want an in-person hearing? One can request – well, I mean, basically there's two different forms. I mean, the form that Mr. Kaufman used is one that allows him the opportunity to basically write a narrative of all of the reasons why he believes that – Yeah, but my question is different. If I don't show up after my car gets towed, and I don't show up and say, here I am for my in-person hearing, immediatemente, then I send a letter instead and say, I want an in-person hearing. Do they give me one? Absolutely. The opportunity – I think the – well, first of all, there's no evidence in the record on this, and that's because this is, again, this sort of highlights the standing issue of we don't really know what happens because Mr. – He didn't request that. Because he didn't request it. But, I mean, I can speak to what's outside the record, but I don't know that that's useful on appeal. I'm only – so we don't have anything here as to what would happen if you sent in the letter that asked for an in-person hearing, as opposed to a supervisor's review on the record. That's correct. And here, I mean, the – sort of the evidence is that Mr. – what Mr. Kaufman desired as to each of the three tows at issue in this case was a written hearing. I mean, they sort of attempt to kind of argue that they don't – these written hearings don't exist, and instead they call them determinations. But I think the fact that these written hearings are meaningful is evidenced by what actually happened to Mr. Kaufman, certainly with respect to one of the two tows. I mean, with the GeoMetro slash trailer – remember, this was the GeoMetro that was sitting on top of the trailer – one of his arguments was, hey, I should not be charged for two separate storage fees because the GeoMetro was sitting on top of the trailer. And that was an argument that was actually successful, and it – But he said in response to that, when he got the call on June 5, they only talked to him about the Geo and then talked to him about the Ford and the trailer, which were the remaining parts of his May 29 and June 1 complaints. So therefore, it was untimely. What does the city say about that? Well, I think there – I think there are two – there are two issues. One is, with respect to the trailer, if you read Mr. Kaufman's deposition transcript, he specifically states that this – when he – that during this conversation with Officer Centrioni, the city would not release the trailer. So that – that is – and the – you know, Mr. Kaufman makes the argument, well, that – that wasn't notification of the results of the written hearing with respect to the trailer. I think that's just – I think that's undermined by his statement that they would not release the trailer. I think the only reading of that statement is – is that, in fact, there was a hearing on the – on the trailer, and it was adjudicated against him. But with respect to the Ford Motorhome, you're correct that there's – there's not evidence in the record that he was notified before July 2nd of – of – of the results of that hearing. Is that the one that didn't have the proper licensing? I believe that's correct. That's the June 1st tow. So what you're saying is that – let's say that, perchance, Mr. Kaufman, given the large number of vehicles he has, gets another tow, and then he shows up at the stop window with Mr. Green and a few witnesses. And a court reporter. And a court reporter. And a subpoena for you and all the people who administer the background administrative stuff. He gets a full, flat-on hearing, just like we would imagine an administrative hearing to be? Your Honor, I think – I'd like to respond to that question by only what's in the record. And what's in the record is that a person can show up at the stop window and receive an immediate determination about whether or not their – their tow was legal. Earlier, you said something more than that. That's why I asked the question. That's what I thought you could get at the stop window. But the way you described it earlier was, come on down, you get a whole hearing. Well, I guess – thank you for the opportunity to clarify. I don't think that there's anything in the record that would preclude a person from doing that. The point is that, according to the testimony of officers – Careful, you might get what you ask for. Again, you know, the point is that these in-person hearings essentially provide a – a one-stop shop where a person can – Well, actually, I beg to differ. Is there anything in the record that indicates that the clerk at the – at the window has the authority to grant a plea? Well, it's not a clerk. It's a neutral hearing officer who hears the tow. But the – A neutral hearing officer at the window who can either accept your fine or give you a hearing. It appears to be from the record that that person is not entitled to give relief. Is that true? It is true that that person must – Make a recommendation to somebody else. To Sergeant Ching, who works at the stop window. And that that determines – the approval or confirmation from Sergeant Ching occurs immediately. There's not an issue of sort of, you know – Or disapproval. I mean, but it's – the person who's making the decision is not the same person who's hearing the facts or conducting the hearing. Right. It's true that the neutral hearing officer does not have the final authority. But what the record states is that when a person – Or does he have any authority at all? They have the authority to deny the hearing request. But not grant it? That person does not. But I think the important point for purposes of the due process analysis is that a person can come to the stop window at 850 Bryant Street, present his or her case as to why the tow was not legal, and receive an immediate determination. Now, whether that determination is the product of the neutral hearing officer either hearing the case and then denying it, or the neutral hearing officer believing that the person is entitled to a refund, and then simply getting confirmation from Sergeant Ching, who works at the stop window, the point is that the person can leave 850 Bryant Street with an immediate determination. And I think that's the important point. It's not the right – Matthews doesn't talk about the right to an immediate determination. It talks about notice and hearing. That's not – There's not a – immediate determination doesn't really form part of due process. In fact, immediate determination would probably be the antithesis of due process if you're saying, no, I'm going to deny this without a hearing. Well, I think there's – It's a determination and it violates due process. Well, I think that the sort of the touchstone under Matthews is whether the hearing afforded provides the individual with the right to, you know, to contest the seizure of the property interest at issue in a meaningful manner. But how – let's just take a specific example. He has a situation where at one point he says his car is parked on the street, he gets the warning notice, says you've got to get it, move it, and he says, yeah, I did, I moved it over here and then I moved it back, same street. And the officer said, no, it's actually on the very same spot. So he shows up at the hearing window. How can he contest that? I mean, there's no officer there to say, actually, he never really moved his car or even if he moved it, it was a subterfuge and he moved it right back. How does he contest that? Well, again, this is – we're sort of venturing – That's his very specific thing that happened to him here. Absolutely. And I think the answer to that question, again, highlights why we really can't know how officer – or, sorry, the neutral hearing officer would have adjudicated Mr. Kaufman's claim because Mr. Kaufman just did not avail himself of this particular procedure. So I would really just be guessing. And it's really sort of staggering. It seems like we really don't know. We're asked to pass on the adequacy of a process that's outside the record. We don't know anything about. You're both kind of putting us in an awkward situation. Well, I think there are a couple of issues. One, as I argued in my brief, there are serious standing issues with this case. And certainly that's a threshold issue for this Court. So that's the first thing. I think the second thing is that part of the reason that the record is so sparse about what happens at the in-person hearings is because Mr. Kaufman did not avail himself of these hearings. Well, perhaps. But he's made a credible argument that it's futile for him to do so. I don't know that it is credible. I mean, the testimony of Sergeant Ching and of Officer Centrione, both of whom have experience interacting or I guess personal knowledge of dealing with how these in-person hearings actually work, have testified that this is an opportunity for a person to come forward, present their case to a neutral hearing officer, and depending on confirmation from Sergeant Ching, receive a determination at that time whether the hearing that the – sorry, whether the tow was actually legal. It's sort of a – Because the hearing basically, he turns over to Officer Ching and says, here's what he says. And he says, okay, or nope. Well, again, I think what a hearing would consist of would depend upon the circumstances of the tow. I mean, it's possible that a person could come forward and say, you know, I was on vacation during this time. And so therefore, you know, or I was – I had some sort of medical issue that precluded me from moving my car. And the officer might respond, well, that doesn't absolve you from the responsibility of moving your car. And it's really hard to kind of speculate about how these officers might have – or how the neutral hearing officer would have responded under the circumstance. It's just a very hard thing to do. And I think that sort of illustrates – Well, the odd thing is that you have a – usually when you have a hearings officer, you have someone who can make a determination. And here, as you say, the hearing officer – neutral hearings officer can't grant relief. It's true that that – I'm sorry, Your Honor. What you're saying is the officer can deny relief, and there's no sort of appeal to the Officer Ching on that. But if it grants relief, it has to go up the chain. Well, if – Someone who hasn't heard the evidence. Again, I think under Matthews, the point is whether – the touchstone is whether it's – whether the opportunity to present your case to a neutral hearing officer who can – who just has to seek confirmation from a sergeant who works in the exact same office, whether that somehow makes the experience – whether it makes the hearing less meaningful. And I think it's also sort of important to note that in the cases that interpret Matthews, I mean, I think that the issue is you have to look at the type of factual dispute that's at issue. And the Supreme Court in City of Los Angeles v. David and I think the Ninth Circuit in – I think it was Schofield – have basically said, which is quite logical, that the issue of whether a car was properly towed is, you know, to quote the Supreme Court in Los Angeles v. David, straightforward. To quote the Seventh Circuit in Sutton, it's cut and dry. So I don't really think that there – there's nothing – there's no evidence in the record that I think would suggest that the process of having a neutral hearing officer basically hear the case of the vehicle owner and then turn to Sergeant Ching for approval deprives the experience – deprives the hearing of its meaningfulness under Matthews. I mean, certainly, I think everyone sort of thinks that it might be desirable to have – Well, I suppose, but, you know, the truth is in San Francisco there's an aggressive towing policy and it's very expensive. It's not like situations in other parts of the country. So my guess is that there are some citations that would be brought in city court or an equivalent that probably don't involve as much of a fine as a tow does. I mean, it's a big business for San Francisco. You get a lot of money from it. It's a big, big business for the towing companies. We all know that. It's not as trivial as one might think from just the word towing. I certainly – there's nothing that I've said that – or there's nothing that I certainly hope that I've said. I mean, it's multimillion dollars, isn't it? I'm sorry? It's multimillion dollars a year. I don't think there's any evidence in the record on that, but it's probably – it's probably correct. But, again, I would just sort of emphasize that the question for purposes of Matthews' is not whether we can think of some procedure that might afford more elaborate process, like an adversarial in-person hearing. Really, the question is what – is whether the procedures that San Francisco has in place afford an opportunity to be heard in a meaningful time and manner. Roberts. Mr. White, just real quick before you conclude. The lack of proper registration or expired – or the fact that his registration was expired, does that affect his standing? Yes, it does. I mean, I think that the fact that Mr. Coffman didn't have – well, these cars weren't roadworthy to begin with. And, for example, here, the fact that Mr. Coffman has basically conceded that the tows were legal. I mean, in his briefs, he sort of says, well, no, I'm not conceding that. But both of the causes of action that challenged the legality of the tows are not raised in the argument section of his appeal. The whole question is, even if he'd had a more elaborate procedure, the tows themselves were proper. And so what all Mr. Coffman would have learned is that he had to pay to get his cars out of storage. Any further questions? No, thank you. Okay. Thank you. We'll give you a couple minutes for rebuttal. Thank you, Your Honors. I have a number of points. I'm going to try to speak quickly. I hope you don't mind. With respect to the vehicle and whether it was registered or not, there's evidence that it was registered. That's beside the point, though, because the Clement case decided by this Court Which vehicle? I'm sorry? Which vehicle? Was registered. So I believe they each had either a temporary registration or an actual registration. But it's beside the point because under the Clement case decided by this Court in 2008, that involved non-operational unregistered vehicles. And 22852 still applied, and there still needed to be constitutional due process complied with, and there wasn't any lack of standing because of that. With respect to 22852 itself, the statute makes quite clear in 22852b-4 that the notice of storage has to say, include a statement that in order to receive their post-storage hearing, the owners or their agents shall request the hearing in person, writing or by telephone within 10 days of the date appearing on the notice. Two things that are of significance here. First, the request for the hearing may be in writing, and that's obvious what Mr. Coffman did. Second, the time of it is supposed to the notice of storage that the police department sends is supposed to say that it can be requested in hearing, in writing, and that it is to be done, a request made within 10 days of the date appearing on the notice. This is not something that we had, that I had noted before. We've made the other argument in our brief about the June 18 tow being timely. His request, he faxed it in. There's plenty of evidence that he made the faxed request on June 26. But even so, even if you simply rely on the mailed request, which was on June 29, that was within 10 days of the June 19 notice of storage and was timely for that reason. Now, I got out the notice that is provided, the notice of storage that is provided by DPT for the San Francisco Police Department, and of course, as we noted in our brief, it doesn't include the statement that is required by 22-852-B4. Secondly, I got out Mr. Coffman's actual request for supervisor's review of tow and refund of tow fees. This is the one that is with respect to the June 18, 2007 tow, and I want to focus on June 18, 2007 right now. And that request makes very clear. It says, applicant, and this is the form provided by SFPD, if your vehicle has been towed by the San Francisco Police Department and you feel the tow was illegal or not authorized by law, you are permitted a hearing by the department to determine the illegality of that tow. If the tow was deemed by the hearing officer to be improper, your fees will be reimbursed, yada, yada, yada. The only basis for a hearing is the legality of the tow. And then it invites the applicant to then provide this very document, written document, as the way of requesting a hearing. This is the procedure that is the form that is prepared by the San Francisco Police Department. This is their way of saying request a hearing in writing as authorized by 22-852-B4. That's exactly what Bob did. And then with respect to the June 18 tow, the last thing that I want to say, and I'm sorry, for the benefit of the record, the documents that I've been referring to are from the Coffman Declaration. The Notice of Storage is ER-373. The Request for Supervisor's Review of Tow and Refund of Tow Fees is ER-375. And now finally is ER-382. And this is Bob Coffman's letter to the police department dated July 26, 2007. This is fully more than a month after the June 18 tow. And he writes, Dear SFPD, on June 26, I faxed to you tow appeals for three-tow vehicles. On June 29, I mailed you identical copies of the faxed documents. I have proof from the USPS that those were mailed. It has been almost a month and I have heard nothing from you. These vehicles are still at auto return accruing storage fees. All of these tows were completely invalid, as I explained in the tow appeals. Why, then, are you taking so long to make your decision? The longer you wait, the more the city will have to pay to release these vehicles to me. Sincerely, Bob Coffman. Mr. Coffman never did hear from the San Francisco Police Department in response to his fax and then his mailed appeal or request for hearing or whatever you want to call it. You invalidly towed my vehicle. I want it back. Whatever you call it, that's what he was saying. And he never heard from the police department as of July 26, and he never heard from them thereafter. They, in fact, never made any determination or sent any letter to Mr. Coffman with regard to that tow. At a minimum, as to that tow, there's no record for the city as having complied with any constitutional due process to make a determination or a prompt determination, much less a determination within two days. And in fact, that Ford Ranger was sold by auto return in a lead sale. He never got it back. The other cars, auto return still has, but that one is gone forever. Thank you, counsel. Thank you. The case just heard will be submitted for decision. Is your client in the courtroom today? My client is in the courtroom, Your Honor. Introduce him. Introduce him for us. Mr. Bob Coffman is seated in the first row. All right. Thank you. Anybody from the city here for you, Mr. White? All right. Thank you very much. The case just heard will be submitted for decision. Go ahead. I'm sorry. I can't remember if I mentioned the ER site. It was 382 on the last site. All right. A little punch after the bell. That's okay. Thank you.
judges: Thomas, McKeown, Murguia